FILED
CLERK

6/15/2018 8:54 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X  Docket#
UNITED STATES OF AMERICA       : 17-cr-00372-JS-GRB
                               :
        - versus -             : U.S. Courthouse
                               : Central Islip, New York
DENNIS VERDEROSA,              :
                Defendant      : April 25, 2018
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR GUILTY PLEA
BEFORE THE HONORABLE GARY R. BROWN
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government**:          **Richard P. Donoghue, Esq.**
                             United States Attorney

                        BY:  **Whitman Knapp, Esq.**
                             Assistant U.S. Attorney
                             One Federal Plaza
                             Central Islip, New York


**For the Defendant**:           **Randy Scott Zelin, Esq.**
                             110 East 59th Street
                             New York, NY 10022




**Transcription Service**:       **Transcriptions Plus II, Inc.**
                             61 Beatrice Ave.
                             West Islip, NY 11795
                             laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Calling 17-cr-372, United States of
2   America v. Dennis Verderosa.

3          Counsel, please state your appearances for the
4   record.

5          MR. KNAPP:  Good afternoon, your Honor.

6          For the United States, Assistant United States
7   Attorney Whitman Knapp, sitting next to me is Special
8   Agent Craig Minsky, who is the agent on this case.

9          Good afternoon, your Honor.

10         THE COURT:  Good afternoon.

11         MR. KNAPP:  Thank you.

12         THE COURT:  Welcome.  Counsel?

13         MR. ZELIN:  Good afternoon, your Honor.

14         My name is Randy Zelin, A-E-L-I-N.  I represent
15  Dennis Verderosa, who is seated to my right and your
16  Honor's left.

17         THE DEFENDANT:  Good morning, your Honor.

18         THE COURT:  Mr. Verderosa, good morning and Mr.
19  Zelin, I am not sure we've seen each other in this
20  century but we have seen each other before.

21         MR. ZELIN:  We have, your Honor.

22         THE COURT:  A very long time ago, but good to
23  see you again.  All right.

24         MR. ZELIN:  Thank you.  You, too.

25         THE COURT: All right.

3

Proceedings

1          Mr. Knapp, what are we doing today?

2          MR. KNAPP:  Your Honor, we're here today for a

3     change of plea hearing.

4          THE COURT:  Excellent.  All right.  So let's

5     begin -- Mr. Verderosa, I am going to begin with you.

6     Just keep the mic close, because we're making a record,

7     okay?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Have you had enough time to talk to

10    your attorney and do you understand what we're doing here

11    today?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  All right.  Very good.

14         And I am going to ask you, one other matter, a

15    preliminary matter, your case is assigned to Judge

16    Seybert.  She's a district judge.   I'm a magistrate

17    judge.  She's busy this afternoon.  She asked me to

18    handle this and the way this works is I will hear the

19    plea and make a recommendation to her, if that's okay

20    with you.

21         Is that okay with you?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  All right.  Then we'll proceed.

24    And you signed this document understanding all of that?

25         THE DEFENDANT:  Yes, sir.

4

Proceedings

1          THE COURT:  Excellent.  All right.

2          So then, sir, before I recommend to Judge

3  Seybert that she consider your plea, there are some

4  questions I have to ask you to make sure that the plea is

5  valid.  So if at any point you don't understand my

6  questions because they're important, just tell me and I

7  will rephrase or I will ask it again, okay?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Oh, good.  First I am going to ask

10  you to stand up for a moment and my clerk is going to

11  swear you in, if you can.  Are you able?

12          THE DEFENDANT:  Yeah.

13          THE COURT:  Okay.

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Okay.  Thank you.

16          THE DEFENDANT:  Sorry.

17  **D E N N I S   V E R D E R O S A ,**

18      **called as a witness, having been first duly sworn,**

19      **was examined and testified as follows:**

20          THE COURT:  All right.  Take your seat, sir.

21          Do you understand that having been sworn your

22  answers today are subject to the penalties of perjury or

23  of a different crime we call making a false statement if

24  you do not answer truthfully.

25          Do you understand that, right?

5

                          Proceedings

1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  Good.  All right.  How old are you?

3              THE DEFENDANT:  I'm going to be 68.

4              THE COURT:  68.  And are you a U.S. citizen?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  How far did you go in school?

7              THE DEFENDANT:  High school.

8              THE COURT:  And are you presently or have you

9    recently been under the care of a doctor, a physician or

10   a psychiatrist?

11             THE DEFENDANT:  I have been, yes.

12             THE COURT:  Okay, for what?

13             THE DEFENDANT:  A broken hip.

14             THE COURT:  Wow, sorry about that.  Are you on

15   any painkillers in connection with that?

16             THE DEFENDANT:  No, sir.  I don't believe them.

17   I don't want to get hooked on them.

18             THE COURT:  Good.  Are you on any other

19   medication that would interfere with your ability to

20   understand?

21             THE DEFENDANT:  No, sir.

22             THE COURT:  Okay.  And then let me ask you

23   this, other than any prescribed medication in the past 24

24   hours, have you taken any narcotics, drugs, medicine or

25   pills or had any alcoholic beverages in the last 24

6

Proceedings

1  hours?

2           THE DEFENDANT:  I had a rum and Coke yesterday,

3  yes.

4           THE COURT:  Okay.  But that's not affecting you

5  now, is that fair to say?

6           THE DEFENDANT:  No, sir.

7           THE COURT:  Good.  All right. Have you ever

8  been hospitalized or treated for a narcotics addiction?

9           THE DEFENDANT:  No, none.

10          THE COURT:  Is your mind clear today?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  And you are confident you

13  understand what's going on?

14          THE DEFENDANT:  Scared but yes, sir.

15          THE COURT:  That's all right.  If you want to

16  take a break at any point, you'll let me know.  If you

17  want to talk to your attorney --

18          THE DEFENDANT:  That's fine, sir, your Honor.

19          THE COURT:  All right.  Let me go to your

20  attorney for now.

21          Mr. Zelin, have you discussed this matter with

22  your client?

23          MR. ZELIN:  Yes, your Honor.

24          THE COURT:  Does he understand the rights that

25  will be waived by pleading guilty?

7

Proceedings

1          MR. ZELIN:  I believe that he does, your Honor.

2          THE COURT:  All right.  And is he capable of

3     understanding the nature of these proceedings?

4          MR. ZELIN:  I believe that he is.

5          THE COURT:  Do you have any question whatsoever

6     as to his competence to proceed today?

7          MR. ZELIN:  No, your Honor.

8          THE COURT:  Okay.  Thank you.  Sir, back to

9     you.

10         First of all, you have the right to plead not

11    guilty and if you have already entered a not guilty plea,

12    you can stand by that plea.

13         Do you understand that?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  And if you plead not guilty, under

16    the Constitution and laws of the United States, you are

17    entitled to a speedy and public trial by a jury with the

18    assistance of counsel on the charges.

19         Do you understand?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Mr. Zelin, you're retained?

22         MR. ZELIN:  I am, your Honor.

23         THE COURT:  Okay.  Sir, for any reason you

24    couldn't afford to pay an attorney for the trial, we

25    would appoint an attorney for you and the Court would pay

8

Proceedings

1   for that.

2           You understand that, too, right?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  Good.  At the trial, you would be

5   presumed to be innocent and the government would have to

6   overcome that presumption and prove you guilty by

7   competent evidence and beyond a reasonable doubt and you

8   would not have to prove that you are innocent and if the

9   government failed, the jury would have the duty to find

10  you not guilty.

11          Do you understand all that?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  In the course of the trial,

14  witnesses for the government have to come to court and

15  testify in your presence.  And your counsel has the right

16  to cross-examine the witnesses for the government, to

17  object to the evidence offered by the government and to

18  offer evidence on your behalf.

19          Do you understand?

20          THE DEFENDANT:  Yes, sir

21          THE COURT:  And if there were witnesses that

22  were reluctant to come to trial, imagine that there were

23  witnesses that would be helpful for you, your lawyer

24  could get an order or a subpoena to force them to come

25  here and testify for you.

9

Proceedings

1          Do you understand?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Good.  At the trial, while you

4   would have the right to testify if you so chose to do so,

5   you would not be required to testify.  Under the

6   Constitution of the United States, you cannot be

7   compelled to incriminate yourself.  If you decided not to

8   testify, the Court would instruct the jury that they

9   could not hold that against you.

10          Do you understand?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  If you plead guilty and I recommend

13   acceptance of that plea, and the plea is accepted, you

14   will be giving up your constitutional rights to a trial

15   and the other rights that I have just discussed.

16          There will be no further trial of any kind and

17   no right to an appeal or collaterally attack at any time

18   the question of whether you're guilty or not.  A judgment

19   of guilty will be entered on the basis of your guilty

20   plea and that judgment can never be challenged.

21          Do you understand all that?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  You may, and I emphasize may, and

24   we'll talk a little bit about this, have the right to

25   appeal with regard to sentence but not with regard to the

10

Proceedings

1    guilty plea.

2              Do you understand the difference?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  All right.  What we're saying is,

5    in other words, on the question of whether you did it or

6    not, if you say you did it today, we're done.

7              You got it?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Okay.  Good.  If you plead guilty,

10   I will have to ask you questions about what you did in

11   order to satisfy myself that you are guilty of the charge

12   or charges that you're pleading guilty to and you'll have

13   to answer those questions and acknowledge your guilt.

14   Thus, you'll be giving up your right not to incriminate

15   yourself.

16             Do you understand?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Are you willing to give up the

19   rights to a trial and the other rights I have just

20   discussed?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  I am going to ask the prosecutor to

23   summarize the plea agreement.  I know there's a plea

24   agreement here.  Could you just, Mr. Knapp, could you

25   summarize the important parts of this?

11

Proceedings

1          MR. KNAPP:  I could and before I get to that,
2    may I just ask the Court and I may have missed this, just
3    to allocute the defendant as to his right to counsel at
4    trial and at other proceedings in the course of this
5    case.
6          THE COURT:  I thought I did that pretty
7    extensively.
8          MR. KNAPP:  Oh.
9          THE COURT:  In fact, I told him if he couldn't
10   afford to pay Mr. Zelin, we would give him counsel and we
11   would pay.
12         MR. KNAPP:  Then you're right and it was
13   something that I missed.
14         THE COURT:  Okay.
15         MR. KNAPP:  I apologize.
16         THE COURT:  Sir, you got all of that, right?
17         THE DEFENDANT:  Yes, your Honor.
18         THE COURT:  The acoustics in here, meaning the
19   sound --
20         THE DEFENDANT:  They're fine, sir.
21         THE COURT:  Okay.  As long as you -- they're
22   very bad.  I just want to make sure you hear me.  Good.
23   Okay.
24         So could you then summarize --
25         MR. KNAPP:  If only the acoustics for the

Proceedings

1   reason I didn't hear you, your Honor.  My apologies.

2              THE COURT:  Can you summarize the high --

3              MR. KNAPP:  Yes.

4              THE COURT:  -- points of the agreement?

5              MR. KNAPP:  Certainly.  The high points of the

6   agreement are that the defendant agrees to plead guilty

7   to Count 2 of the indictment.  He agreed to additionally,

8   not to file an appeal or collaterally challenge the

9   conviction or the sentence in the event that the Court

10  imposes a term of imprisonment of 210 months or below.

11             Additionally, he consents to the entry of a

12  forfeiture money judgment in the amount of $341,883.

13             The government agrees, subject to certain

14  enumerated exceptions, not to prosecute the defendant for

15  the conduct that's specified in paragraph 5(a) of the

16  agreement.  There are other provisions, your Honor, but

17  these are the high level, most relevant provisions.

18             THE COURT:  All right.  Sir, do you understand

19  that, that that is a summary of the agreement?  Yes?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Okay.  And one part I want you to

22  pay particular attention to, the Assistant said that if

23  you get sentenced to 210 months or below, no appeal.

24             Do you understand that?

25             THE DEFENDANT:  Yes, sir.

13

Proceedings

1          THE COURT:  Okay.  Good.  One other thing I am
2  going to ask the AUSA to do is this.  First of all,
3  before I do that, you've read the plea agreement with
4  your attorney and you understand it, yes?

5          THE DEFENDANT:  Me?  Yes, your Honor.

6          THE COURT:  And you read through it and you
7  discussed it, yes?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Okay, good.  There is something we
10  call the elements of a charge, the elements of a crime.
11  It's the basic things the government has to prove at
12  trial in order to convict you.  I want you to listen
13  because I am going to ask the AUSA to summarize those for
14  you, okay?  Could you please do that for us?

15          MR. KNAPP:  Sure.  Here are the elements.  It's
16  conspiracy to commit wire fraud, as I previously
17  mentioned.  And the elements of conspiracy are first,
18  that two or more persons entered into an agreement; here,
19  to commit wire fraud.

20          And second, that the defendant knowingly and
21  intentionally became a member of that conspiracy.

22          The elements of wire fraud are the following.
23  First, that there was a scheme or artifice to defraud or
24  to obtain money or property by false and fraudulent
25  pretenses, representations or promises.

14

Proceedings

1          Second, that a defendant knowingly and

2    willfully participated in the scheme or artifice to

3    defraud with knowledge of its fraudulent nature and with

4    specific intent to defraud.

5          And thirdly, that in the execution of the

6    scheme, the defendant used or caused the use of

7    interstate wires.

8          THE COURT:  All right.  So, Mr. Verderosa, you

9    understand -- I'm sorry, do you need a moment?

10         MR. ZELIN:  No, your Honor.  I have an unusual

11   request.

12         THE COURT:  Anything you want.

13         MR. ZELIN:  It is easier for Mr. Verderosa,

14   given his hip --

15         THE COURT:  To stand?

16         MR. ZELIN:  -- if he stands.

17         THE COURT:  He can stand on the table.

18         MR. ZELIN:  Thank you.

19         THE COURT:  I don't --

20         MR. ZELIN:  That I don't need him to do but --

21         THE COURT:  You know what?  Let's do this.

22   Again, counsel, you can join him.  Why don't you stand at

23   the podium, so this way we have the mic, right?

24         MR. ZELIN:  Yes, your Honor.

25         THE COURT:  And you both can stand at the

15

Proceedings

1    podium, the mic's right there and I am glad you raised

2    that.

3              MR. ZELIN:  We just need a second, sir.

4              THE COURT:  But come on over to the podium, we

5    can do it from there.  And if you need to take a break at

6    any time, just say so, okay?

7              MR. ZELIN:  Once he is standing, your Honor,

8    and he takes a couple of steps, he's okay.

9              THE DEFENDANT:  Okie doke.

10   (Pause)

11             THE COURT:  Wow, was that from a car accident?

12             THE DEFENDANT:  I'm sorry, sir?

13             THE COURT:  Was that from a car accident?

14             MR. ZELIN:  The falling off of a boat.

15             THE COURT:  Sorry, that's terrible.  All right.

16             THE DEFENDANT:  I thought I could fly.

17             THE COURT:  All right.  What I am going to next

18   is I am going to summarize the potential penalties, okay,

19   for the one count that we're talking about, okay?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  So there is a maximum term of

22   imprisonment of 20 years.

23             Do you understand that?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  And there's no minimum term of

16

Proceedings

1  imprisonment, so we don't have to worry about that.

2  There's a maximum, what we call supervised release term

3  of three years.

4           Do you know what supervised release is?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  It's like probation or parole,

7  right?

8           THE DEFENDANT:  Uh-hum.

9           THE COURT:  That was the older words for it.

10  Right?  You're released.  You've finished your sentence

11  but you're still under the jurisdiction of the Court and

12  if you do things like commit a new crime, or violate

13  certain conditions, you can go back to jail.

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  And in this case, up to two years

16  without credit for anything you've already served.

17          THE DEFENDANT:  Understood, sir.

18          THE COURT:  Okay.  Now, let me go back to Mr.

19  Knapp for a second.  Mr. Knapp, it says maximum fine

20  $250,000 or twice the gross gain or loss.  What am I

21  doing here, sir?

22          MR. KNAPP:  Based upon our current estimates,

23  twice the gross gain in this case with regard to the

24  defendant would be $682,000, so the amount would be in

25  excess of $250,000.

17

Proceedings

1      THE COURT:  Right, but it would be $1.3 million

2  dollars you're saying roughly?

3      MR. KNAPP:  No, the gross gain, we are now

4  estimating at an amount of $300- --

5      THE COURT:  Oh, 682 is the double.

6      MR. KNAPP:  It's double, exactly.

7      THE COURT:  So what the AUSA is telling me, is

8  based on what they know and I am not sure they're right,

9  but that the fine could be up to like $700,000.

10      Do you understand that?

11      THE DEFENDANT:  Yes, sir.

12      THE COURT:  Okay.  I have to explain all the

13  risks, right?

14      Now restitution is another number and if I am

15  going to use the Assistant's number again, if there's

16  like 300- and some-odd-thousand dollars that is

17  attributable to you,  you may have to pay the victims

18  back that amount.

19      Do you understand that?

20      THE DEFENDANT:  Yes, sir.

21      THE COURT:  Okay.  In fact, that's mandatory.

22  To the extent that they calculate that number -- and the

23  reason I said may, I don't know what the number is going

24  to be or whatever the losses are, you have to replay.

25      Do you understand?

18

Proceedings

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  In addition, there's a $100 special

3    assessment that you must pay. Okay?  That's a separate

4    fund, so you have to pay that.

5          And there's certain criminal forfeitures

6    specified in the agreement, which I am not going to go

7    through but there's certain funds that you agreed to

8    forfeit.

9          You understand that, yes?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  All right.  Good.  Have you

12   discussed with your attorney the sentencing guidelines?

13   Has he told you about those?

14         THE DEFENDANT:  I believe so, sir, yes.

15         THE COURT:  Okay.  That thing where they came

16   up with a level and an amount and they guessed at what

17   the sentence range could be, yeah?

18         THE DEFENDANT:  Oh, yes, sir.

19         THE COURT:  Yes.

20         THE DEFENDANT:  Yes.

21         THE COURT:  So what you have to understand is

22   that the sentencing guidelines, they're not mandatory.

23   The judge has to consider them but she doesn't have to

24   follow them at the end of the day.

25         THE DEFENDANT:  Yes, sir.

Proceedings

1          THE COURT:  And she has to consider that, along

2    with certainly statutory factors such that she will

3    consider the nature and circumstances of the offense, and

4    your criminal history, if any, and your personal

5    characteristics in creating a sentence.

6          Do you understand that?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  All right.  What that means, the

9    only guarantee -- there's only one guarantee here and

10   that's that that 20-year statutory maximum.

11         Do you understand?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  In other words, they could be wrong

14   about the sentencing guidelines or they could be right

15   and Judge Seybert doesn't follow them but 20 years is the

16   only guarantee.

17         Do you understand?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Okay, good.  In formulating a

20   sentence, the district court must consider other factors

21   including the seriousness of the offense, just

22   punishment, protection of the public from additional

23   criminal conduct by you, or by others and where

24   appropriate, and I don't know if it's appropriate here,

25   your cooperation if the government files something called

20

Proceedings

1    a 5k letter.

2              Do you understand all that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Do you realize, sir, if the

5    sentence is more severe than you expect, if it's worth

6    than you thought, you can't withdraw the guilty plea.

7    You would still be bound it.

8              Do you understand that?

9              THE DEFENDANT: Yes, sir.

10             THE COURT:  Okay.  Do you have any questions

11   you would like to ask me about the charges, your rights,

12   or anything else related to this matter?

13             THE DEFENDANT:  No, sir.

14             THE COURT:  Are you ready to plead?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  All right.  Before I do that, Mr.

17   Zelin, is there any legal reason why this defendant

18   should not plead?

19             MR. ZELIN:  None that I can think of, your

20   Honor.  Thank you.

21             THE COURT:  All right.  Thank you.

22             And, sir, before I ask you about the plea, are

23   you satisfied with your legal representation?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Do you think Mr. Zelin did a good

21

Proceedings

1   job?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  All right.  Good.  Glad to hear

4   that.  So in that case, what is your plea to Count 2 of

5   the indictment, guilty or not guilty?

6           THE DEFENDANT:  Guilty, your Honor.

7           THE COURT:  Are you making that plea of guilty

8   voluntarily and of your own free will?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  Has anyone threatened you or forced

11  you to plead guilty?

12          THE DEFENDANT:  No, sir.

13          THE COURT:  Other than the agreement with the

14  government as stated on the record, has anyone made you

15  any promises that caused you to plead guilty?

16          THE DEFENDANT:  No, sir.  Bless you.

17          THE COURT:  Has anyone made you a promise as to

18  what your sentence will be?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  Okay.  It's your lawyer's job, it's

21  Mr. Zelin's job to give you an estimate, right?  He'll

22  say based on his experience, this is what I think the

23  guidelines are --

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  -- or this might happen but there's

22

Proceedings

1  a difference between an estimate and a promise, right?

2          You understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Okay, all right.  In that case,

5  sir, please describe for me in your own words what you

6  did here that makes you guilty of this count.

7          THE DEFENDANT:  Yes, sir.

8          MR. ZELIN:  If your Honor please, if my client

9  could be permitted to read the allocution, just for

10  purposes of clarity on the record.

11          THE COURT:  Absolutely.

12          MR. ZELIN:  And as he indicated, he is quite

13  nervous.

14          THE COURT:  Yes, absolutely.  Please go ahead.

15          MR. ZELIN:  Keep your voice, take your time.

16          THE COURT:  Take your time.

17          THE DEFENDANT:  Sorry, but I didn't bring my

18  reading glasses, so just bear with me here.

19          THE COURT:  Okay.

20          MR. ZELIN:  I have a pair.

21          THE DEFENDANT:  Between January --

22          MR. KNAPP:  Would you like a pair?

23          THE DEFENDANT:  Could I please?

24          MR. KNAPP:  Yeah.

25          MR. ZELIN:  Your Honor, if we may have a

23

Proceedings

1   moment, the government is kind enough to provide --

2            THE COURT:  Wait.

3            MR. ZELIN:  -- my client with reading glasses.

4   In the spirit --

5            THE COURT:  Okay.  Mr. Knapp, you happen to

6   have the right prescription with you?  That's

7   extraordinary.

8            MR. ZELIN:  Only one way to find out, your

9   Honor.  Thank you very much, Mr. Knapp.

10           THE DEFENDANT:  Wow, they work.

11           MR. ZELIN:  Good.

12           THE COURT:  Does that help?

13           THE DEFENDANT:  Yes, very much, sir.

14           THE COURT:  Mr. Knapp, that's extraordinary.

15   Okay.

16           Go ahead, sir.

17           THE DEFENDANT:  Thank you.  Between January

18   14th and July 17th --

19           MR. ZELIN:  No, no, 2014.

20           THE DEFENDANT:  I'm sorry, yeah, 2014 --

21           MR. ZELIN:  All right, slow.

22           THE COURT:  -- and July, 2017, I worked as a

23   cold-caller at MyStreetResearch -- excuse me -- which was

24   previously known as TradeMastersPro and PowerTradersPress

25   and for ease of reference, I will refer to all of these

24

Proceedings

1   businesses as MyStreetResearch.

2           MyStreetResearch was located at an office in

3   Melville, New York which is in the Eastern District of

4   New York.  During the time I was working for

5   MyStreetResearch, I agreed along with others named in the

6   indictment, to induce investors to purchase stocks, so

7   that they would receive a financial benefit --

8           MR. ZELIN:  We would.

9           THE DEFENDANT:  So that we would receive a

10  financial benefit but the investors would not.  While it

11  was not my intention to engage in criminal wrongdoing

12  when I first started working at MyStreetResearch, and did

13  not recognize at the time I started working, that there

14  was criminal wrongdoing taking place at MyStreetResearch,

15  I learned of the aims of the conspiracy later on and

16  continued it in my participation and at that time, I knew

17  that we were -- what we were doing was wrong.

18          I, along with the other defendants, knowingly

19  and intentionally misled investors as to the true value

20  of the stocks we were selling by overstating their

21  current and future earnings capacities.

22          Excuse me.

23          There were times when I was aware of the high

24  probability that investors are not being told the truth

25  but I deliberately avoided confirming that and failed to

Proceedings

1   question my superiors.  I used the telephone and email to

2   communicate with investors and to persuade them to

3   purchase stocks that I knew or willfully failed to

4   confirm were not worth what they represented them to be

5   worth and I knew or willfully failed to confirm that

6   these stocks would not perform in the manner we

7   predicted.

8           Specifically, the defendants, including me, who

9   were members of the conspiracy, misled investors about

10  the stock of National Waste Management Holdings Co.,

11  Inc., CES Synergies, Inc., Grill Cheese Truck, the

12  Hydrocarb Energy Corporation.

13          Some of the persons with whom I communicated by

14  telephone and email were located outside of New York

15  State.

16          In closing, as a result of our

17  misrepresentations to investors, I and others made money

18  as a result of this scheme.  We did so at the expense of

19  the investors.

20          THE COURT:  I know you just read a statement to

21  me, sir, but those are you words?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  And that's what happened?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Mr. Knapp, is there anything you

26

Proceedings

1  would like to inquire further about?

2           MR. KNAPP:  No, your Honor.  The government is

3  satisfied.

4           THE COURT:  Okay.  I think what I heard was an

5  amalgam of sort of knowledge and wilful blindness.  Is

6  wilful blindness enough to satisfy the statute?

7           MR. KNAPP:  Your Honor, to the extent that

8  there was a degree of wilful blindness in terms of verify

9  these --

10           THE COURT:  That part.

11           MR. KNAPP:  -- that is still, that would be

12  sufficient.  There's also a degree of nonwilful blindness

13  that totally satisfies it.

14           THE COURT:  Again, I thought I heard both.

15           MR. KNAPP:  Yes, as did  --

16           THE COURT:  And I could inquire further.

17           MR. KNAPP:  -- as did the government.

18           THE COURT:  Right.  Mr. Zelin, are you agreed

19  on that point?  In other words, that the combination of

20  wilful blindness and nonwilful blindness is sufficient to

21  satisfy the requisites of the statute?

22           MR. ZELIN:  Yes, your Honor, I do.

23           THE COURT:  All right.  Is there anything you

24  would like to add or ask your client to the allocution?

25           MR. ZELIN:  No, your Honor.

27

Proceedings

1        THE COURT:  Good.  Mr. Knapp in that case, I am

2   going to ask you to outline the proof the government have

3   presented if this matter proceeded to trial.

4        MR. KNAPP:  Yes.  Had the matter proceeded to

5   trial, the government would have presented witnesses who

6   would testify against the defendant, including victims

7   and/or we would anticipate presenting co-conspirators.

8   We would also present bank records, telephone records,

9   records of other communications, all that would in our

10  estimation, establish the elements of the offense to the

11  jury beyond a reasonable doubt.

12       THE COURT:  And you said you have transaction

13  records, as well?

14       MR. KNAPP:  And transactional records, as well.

15       THE COURT:  Mr. Zelin, anything else you need

16  to add?

17       MR. ZELIN:  No, our Honor.  Thank you.

18       THE COURT:  All right.  Then based on the

19  information given to me, I find that the defendant is

20  acting voluntarily, that he fully understands his rights

21  and the consequences of the plea and that there is a

22  factual basis for the plea.

23       I therefore recommend acceptance of the plea of

24  guilty to Count 2 of the indictment.

25       Do we have a sentencing date here?

28

Proceedings

1      MR. KNAPP:  We do, your Honor.  We've been

2  provided with the date, September 28th at 11 a.m.

3      THE COURT:  Okay.  So we have a sentencing

4  date.  There's no application to change bail status,

5  correct?

6      MR. KNAPP:  That's correct.

7      THE COURT:  Okay.  Mr. Verderosa, that means

8  you're going home.  Right?  We're going to keep the bail

9  conditions the same but between now and September,

10  there's a lot of work to be done.  Your attorney has to

11  work on something called a presentence report for the

12  judge.  He's going to need a lot of information from you.

13  Make sure you keep in touch with him.  Make sure you keep

14  current on when you're supposed to be back because if you

15  don't come back, that's a big problem.  Right?

16      THE DEFENDANT:  Yes, sir.

17      THE COURT:  All right.  Good.  Anything else we

18  should cover today for the government?

19      MR. KNAPP:  No, your Honor.

20      THE COURT:  Anything else for the defendant?

21      MR. ZELIN:  Nothing, your Honor, thank you.

22      THE COURT:  All right.  Good luck to you, sir.

23  Take care.

24      THE DEFENDANT:  May I --

25      MR. ZELIN:  Your Honor, thank you very much.

29

Proceedings

1          THE DEFENDANT:  May I say you're an excellent

2    magistrate.

3          THE COURT:  We do our best.

4          THE DEFENDANT:  Thank you.

5          MR. KNAPP:  Thank you, your Honor.

6          MR. ZELIN:  Thank you.

7               (Matter concluded)

8                    -o0o-

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

30

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **14th** day of **June**, 2018.

*Linda Ferrara*
Linda Ferrara

AAERT CET**D 656
Transcriptions Plus II, Inc.