```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

            -against-                    MEMORANDUM & ORDER
                                         17-CR-0372-9(JS)
DENNIS VERDEROSA,

                    Defendant.
----------------------------------X
APPEARANCES
For United States:   Whitman G.S. Knapp, Esq.
                     Kaitlin T. Farrell, Esq.
                     U.S. Attorney's Office
                     Eastern District of New York
                     271 Cadman Plaza East
                     Brooklyn, New York 11201

For Defendant:       Jillian Berman, Esq.
                     Gabrielle F. Friedman, Esq.
                     David Angelatos, Esq.
                     Lankler Siffert & Wohl LLP
                     500 Fifth Avenue
                     New York, New York 10110
```

SEYBERT, District Judge:

Defendant Dennis Verderosa ("Defendant") seeks a reduction of his sentence, pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), in light of health concerns surrounding the COVID-19 pandemic, his underlying medical conditions, and Federal Correction Institute Otisville's ("FCI Otisville") pandemic response. (Mot., D.E. 865.) For the reasons set forth below, the motion is DENIED without prejudice.

BACKGROUND

I.   Factual and Procedural History

On or around July 11, 2017, a grand jury charged Defendant with conspiracy to commit securities fraud, conspiracy to commit wire fraud, and four substantive securities fraud counts arising out of his role as a cold-caller in a "Boiler Room" that engaged in "manipulative trading patterns, including wash trades and matched trades, to drive up" the share prices of various publicly traded companies while employees, such as Defendant, "aggressively and repeatedly called and emailed victim investors to purchase shares." (Indictment, D.E. 1.) On April 25, 2018, Defendant pled guilty to one count of conspiracy to commit wire fraud pursuant to a plea agreement with the Government.[1] (Min. Entry, D.E. 204.)

For this offense, the sentencing guidelines provided a range of 188 to 235 months' imprisonment and probation recommended a term of 72 months' imprisonment and $10,122,544.79 in restitution. (Sec. Am. Presentence Report ("Sec. Am. PSR"), D.E. 512, ¶ 145; Revised Probation Rec., D.E. 512-1, at 1.) Probation reasoned that "while the loss attributable to [Defendant] is substantial, the resulting guidelines sentence range may appear

---

[1] Then-Magistrate Judge Gary R. Brown recommended that this Court accept Defendant's guilty plea. On June 19, 2018, this Court accepted the guilty plea. (Order, D.E. 250.)

2

excessive given his role within the overall enterprise."[2]  (Revised Probation Rec. at 2-3.)  On September 16, 2019, the Court sentenced Defendant to a term of 72 months' incarceration and 3 years' supervised release.  (Min. Entry, D.E. 529; Sent'g J., D.E. 530.)

## II.  FCI Otisville

Defendant has been incarcerated at the satellite camp ("Otisville Camp") at the FCI Otisville since December 9, 2019. (Verderosa Decl., D.E. 865-2, ¶ 2.)  As of the date of this Order, Defendant has served approximately eleven months of his sentence and is expected to be released on January 17, 2025.  See BOP.gov, www.bop.gov/inmateloc/index.jsp (last visited Oct. 29, 2020). While incarcerated, Defendant has not committed any disciplinary infractions and works at the Otisville Camp's garage and attends religious services, among other classes.  (Verderosa Decl. ¶ 8.)

In April 2020, the Otisville Camp experienced an outbreak of COVID-19.  Defendant represents that on or about April 16, 2020, FCI Otisville staff advised him, and other inmates, that they would be transferred to FCI Otisville's medium security prison for a medical quarantine prior to their release to home confinement.  (Verderosa Decl. ¶¶ 4, 34.)  Defendant completed forms for compassionate release, transfer to home confinement, and

---

[2] The Presentence Report indicated that Defendant was directly accountable for a loss of $114,787,270 and that he gained $341,883 in proceeds.  (First PSR, D.E. 306, ¶ 83.)

furlough. (Id. ¶ 34.) Defendant submits a "Furlough Application - Approval and Record" form, dated April 16, 2020, verified by "J. DeLeo," a correctional counselor. (Ex. A, D.E. 865-3.) Under a heading titled "Approval" reads: "[a]pproval for the above named inmate to leave the Institution on a furlough as outlined is hereby granted in accordance with P.L. 93-209 and the [Bureau of Prisons ("BOP")] Furlough Program Statement. The period of Furlough is from 04/27/2020 9:00AM to 5/27/2020 9:00AM." (Id.) The Furlough Application contains what appears to be electronic signatures from "CMC K. Walker" and "J. Petrucci, Warden," although not dated. (Id.) Neither the "Approval" nor "Disapproval" boxes are selected and there is nothing provided in the space under the Warden's electronic signature for "Reason(s) for disproval." (Id.)

On or around April 23, 2020, the Otisville Camp administrator informed Defendant that he "was not leaving because [Defendant] had only served a short portion of [his] sentence." (Verderosa Decl. ¶ 35.) On or about May 11, 2020, Defendant was released from medical quarantine and returned to the Otisville Camp. (Id. ¶ 5.) On May 9, 2020, Defendant emailed the Warden requesting reconsideration and the Warden responded that Defendant was "not granted a furlough" but was "reviewed using the current guidelines" and "did not meet the requirement for home confinement." (Ex. B., D.E. 865-4.) The Warden later clarified that Defendant was placed in quarantine "based on [a] risk for

4

COVID-19" but was denied furlough because he "had not completed 50% of [his] sentence as was required after April 22, 2020." (Ex. C, D.E. 865-5.) On June 9, 2020, Defense Counsel wrote to the Warden, objecting to FCI Otisville retracting Defendant's furlough plan "at the last minute" and to the "requirement" that Defendant serve fifty percent of his sentence. (Ex. D., D.E. 865-6.) Defense counsel also requested that the Warden release Defendant to home confinement, on furlough, or that the Warden file a motion for compassionate release. (Id.) The Warden did not respond to the letter. In June 2020, the Otisville Camp experienced a second outbreak of COVID-19. From approximately June 16, 2020 to July 22, 2020, Defendant was placed in another medical quarantine. (Verderosa Decl. ¶¶ 6-7.)

According to the information maintained by the BOP for FCI Otisville, as of November 2, 2020, 2 inmates and 2 staff members are listed as "positive" for COVID-19, and 24 inmates and 14 staff members are listed as "recovered" from the virus. See COVID-19 Cases, BOP.gov, http://www.bop.gov/coronavirus/ (last visited Nov. 2, 2020).

III. Defendant's Medical Conditions and the Pending Motion

Defendant is a 70-year-old former smoker who suffers from type II diabetes with diabetic neuropathy, heart disease, including hyperlipidemia, hypertension, coronary atherosclerosis, and electrocardiogram abnormalities, depression, and anxiety.

5

(See Verderosa Decl. ¶¶ 1, 10-14; see also First PSR ¶ 122; BOP Recs., Ex. L, D.E. 868-7, at ECF pp. 3 (diabetes with diabetic neuropathy), 50 (hyperlipidemia); Ex. E, D.E. 868 (noting history of depression and heart disease); Ex. K., D.E. 868-6 (coronary atherosclerosis and electrocardiogram abnormalities).) Defendant is prescribed different medications for these conditions. (See, e.g., BOP Recs. at ECF p. 3.) In 2014, Plaintiff fractured his left hip and, at the time of sentencing, became "progressively worse" and required a hip replacement. (First PSR ¶ 123; Sent'g Tr. at 4:22-5:1.)

Defendant, through counsel, moved this Court for compassionate release on August 7, 2020, requesting that the Court decrease his sentence to time-served, convert the unserved portion of his sentence to a term of supervised release on condition of home confinement. (Def. Br., D.E. 865-1; Reply, D.E. 897.) If released, Defendant represents he will quarantine and reside in the finished basement of the single-family home he owns with his wife in Coram, New York. (Verderosa Decl. ¶ 37.) The Government opposes the motion. (Gov't Opp., D.E. 884.)

## DISCUSSION

I.  Legal Standard

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14,

6

2020) (quoting United States v. Gotti, No. 04-CR-0743, 2020 WL 497987, at *1 (S.D.N.Y. Apr. 6, 2020)). The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A)(i).

Under the statute, courts have discretion to grant compassionate release when there are (1) "extraordinary and compelling reasons" that warrant a sentence reduction, (2) the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the sentence reduction "is supported by the factors set forth in 18 U.S.C. § 3553(a)." United States v. Canales, No. 16-CR-0212, 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

District courts may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, No. 19-CR-3218, --- F.3d ---, 2020 WL 5739712, at *7 (2d. Cir. Sept. 25, 2020) (finding that "[b]ecause

7

Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants [as compared to those brought by the BOP], Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling."). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Id. at *8 (quoting 28 U.S.C. § 994(t)) (emphasis and alteration in original).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020). A defendant "bears the burden of showing that his release is justified." United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020).

II. Analysis

The parties do not dispute that Defendant exhausted his administrative remedies. The Court thus turns to the merits.

A. <u>Extraordinary and Compelling Reasons</u>

Defendant argues that his age, medical conditions, and FCI Otisville's pandemic response, including its decision to place inmates in solitary confinement-like conditions to quarantine, constitute extraordinary and compelling reasons justifying his release because these factors place him at high risk of severe illness should he contract COVID-19 while incarcerated. (<u>See generally</u> Def. Br.) In a supplemental letter, Defendant advised the Court that his health is "worsening,"[3] he has "unexplained swelling in both legs," and that "[c]onditions at FCI Otisville continue to put [Defendant] at risk" because it has started accepting visitors and the garage where he works does not consistently enforce a face covering requirement. (Def. Ltr., D.E. 907, at 1-2.) The Government acknowledges Defendant's medical conditions but responds that compassionate release is not warranted because FCI Otisville has "been able to successfully manage and treat" his conditions during the "worst period of the outbreak." (Gov't Opp. at 12.)

When presented with motions arising out of the COVID-19 pandemic, some courts find that extraordinary and compelling

---

[3] On October 2 and October 7, 2020, Defendant saw a prison physician who prescribed medication, ordered an echocardiogram, and commented that Defendant has "diabetes and hyperlipidemia which increases his chances of high risk complications if he contracts Covid19 as per CDC guidelines." (Suppl. BOP Recs., D.E. 908.)

9

reasons exist where a defendant's medical conditions fall within the high-risk category as defined by the Centers for Disease Control and Prevention ("CDC"). See, e.g., United States v. Zukerman, 16-CR-0194, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (collecting cases); see also United States v. Serrano, No. 13-CR-0058, 2020 WL 5259571, at *3 (S.D.N.Y. Sept. 3, 2020). Indeed, in some cases, the Government concedes the same. See, e.g., United States v. Ramirez, No. 19-CR-0105, 2020 WL 4577492, at *2 (S.D.N.Y. Aug. 6, 2020) (the government did not dispute that defendant's health conditions (including diabetes, hypertension, elevated cholesterol, and morbid obesity) "constitute an extraordinary and compelling reason justifying release").

Here, Defendant, who is 70, falls into a high-risk age group for COVID-19 complications. Older Adults, Coronavirus Disease 2019 (COVID-19), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Sept. 11, 2020). He also suffers from underlying health conditions, such as type II diabetes, heart disease, and smoking (former), that place him at an increased risk of severe illness from COVID-19. See People with Certain Medical Conditions, Coronavirus Disease 2019 (COVID-19), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Oct. 16, 2020). It is true that "Defendant makes no specific allegations that his medical needs have not been

10

adequately addressed at" FCI Otisville. United States v. Chestnut, No. 12-CR-0837, 2020 WL 5371021, at *2 (S.D.N.Y. Sept. 8, 2020). However, "not only is he at a higher risk of serious illness if he contracts COVID-19 due to his underlying health conditions, but he is also at a higher risk of contracting COVID-19 due to his incarceration." United States v. Gross, No. 15-CR-0769, 2020 WL 1862251, at *3 (S.D.N.Y. Apr. 14, 2020) (emphasis in original). "[R]ealistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself." United States v. Butler, No. 19-CR-0834, 2020 WL 1689778, at *2 (S.D.N.Y. Apr. 7, 2020).

For these reasons, the Court agrees with the various other courts that "have recently concluded that 'extraordinary and compelling reasons' exist for purposes of the policy statement where inmates suffer from medical conditions that place them at a higher risk of serious illness in the event they contract COVID-19." Gross, 2020 WL 1862251, at *3 (citing Zukerman, 2020 WL 1659880, at *5); United States v. Escobar, No. 15-CR-0150, 2020 WL 4605213, at *4 (E.D.N.Y. Aug. 11, 2020) (finding defendant's type II diabetes, while well-controlled with medication, an "extraordinary and compelling reason to support his release."). Therefore, these considerations favor Defendant's early release.[4]

---

[4] The Court acknowledges that Defendant raises similar concerns regarding FCI Otisville's pandemic response as the Court addressed

11

B. <u>The 3553(a) Factors and Sentencing Commission Policy Statements</u>

The Court next considers the Section 3553(a) factors and whether release is consistent with the Sentencing Commission's policy statements. <u>See</u> 18 U.S.C. § 3582(c)(1)(A)(i). These factors largely overlap and are therefore analyzed together. <u>See</u> Sections 3142(g) and 3553(a).

While two of the Section 3553(a) factors arguably favor an early release, "history and characteristics of the defendant," and "the need to provide the defendant with needed . . . medical care," they "are outweighed by the combined force of several other factors." <u>United States v. Walter</u>, No. 18-CR-0834, 2020 WL 1892063, at *3 (S.D.N.Y. Apr. 16, 2020) (citing Section 3553(a) factors: "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant.").

---

in <u>United States v. Pellegrino</u>, No. 18-CR-0496, 2020 WL 5820325 (E.D.N.Y. Sept. 30, 2020) (Seybert, J.). (<u>See</u> Def. Ltr. at 2-3.) However, "the circumstances <u>unique</u> to [Pellegrino's] case" consituted extraordinary and compelling reasons to modify the sentence imposed. <u>Pellegrino</u>, 2020 WL 5820325, at *4 (emphasis added).

12

Although Defendant pled guilty to nonviolent crime, "there is a strong need for [him] to serve the sentence that was imposed." United States v. Graham, No. 16-CR-0786, 2020 WL 5604050, at *3 (S.D.N.Y. Sept. 17, 2020). The Court sentenced Defendant for his role as cold caller in a fraudulent stock manipulation operation who aggressively targeted vulnerable and elderly victims. As the Court stated at sentencing, this case is "particularly difficult" because "it's an incredible crime that seeks the most vulnerable people that worked hard all of their lives, have saved their money, have dreams of going on special trips, seeing their grandchildren." (Sent'g Tr. at 57:4-9.) Indeed, Defendant's conduct directly caused the victims to suffer devastating financial and emotional losses. As such, a "reduced sentence would not reflect the harm suffered." United States v. Itzchaki, No. 16-CR-0236, 2020 WL 4194800, at *2 (S.D.N.Y. July 21, 2020).

Moreover, Defendant has served approximately fifteen percent of his 72-month sentence, which represented a significant downward departure from the advisory guidelines range. "Given the length of time remaining on his sentence, immediate release would not serve the principle of deterrence." Id.; see also United States v. Goldberg, No. 13-CR-0120, 2020 WL 6273947, at *3 (E.D.N.Y. Oct. 26, 2020) (finding the Section 3553(a) factors weighed against compassionate release where the defendant was

13

convicted of wire fraud, among other crimes, and a reduction would result in defendant serving under 30% of his sentence and "fail to reflect the seriousness of the offense [ ] committed and would not provide a just punishment for his conduct."); United States v. Zemlyansky, No. 12-CR-0171, 2020 WL 3638425, at *2 (S.D.N.Y. July 6, 2020) (denying compassionate release and finding that the Section 3553(a) factors counseled against compassionate release where "[d]efrauded victims of the enterprise lost millions of dollars" and the "crimes were extremely serious."); United States v. Nehmad, No. 16-CR-0829, 2020 WL 4586798, at *2 (S.D.N.Y. Aug. 10, 2020) (denying compassionate release and stating that "critically, Defendant has served only a small portion of his sentence. Reducing his already under-Guidelines sentence further from 75 months to, effectively, 30, would dilute the sentence's deterrent effect and fail to adequately promote respect for the law."). Thus, the Court finds, as it did at sentencing, that while Defendant "definitely has certain issues with his health that would entitle him to a downward departure. . . . this is a case of straightforward greed" and "[s]ociety needs to be protected." (Sent'g Tr. at 58:1-8.) The Court accordingly denies release at this time.

III. Furlough

Although not requested, the Court considers whether a "judicial recommendation that the BOP release him to home

14

confinement for the remainder of his sentence under 18 U.S.C. § 3624(c)(2)" is appropriate. As a sister court in this Circuit recognized, Defendant's "request for compassionate release under 18 U.S.C. § 3582 is an application to terminate the remainder of his sentence" and "[g]ranting that request would be unjust, as would granting [an] alternative request for a judicial recommendation that the BOP release him to home confinement for the remainder of his sentence." United States v. Daugerdas, No. 09-CR-0581, 2020 WL 2097653, at *5 (S.D.N.Y. May 1, 2020). However, "the best--perhaps the only--way to mitigate the damage and reduce the death toll [of inmates from COVID-19] is to decrease the jail and prison population by releasing as many people as possible." United States v. Nkanga, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020). Accordingly, "this Court believes that [Defendant] is fit for temporary release from prison--but only until the COVID-19 pandemic abates." Daugerdas, 2020 WL 2097653, at *5.

While the authority to grant Defendant temporary release "rests solely with the BOP . . . 'nothing in Section 3622 prevents this Court from recommending that the BOP exercise its discretion to grant [Defendant] temporary release.'" Id. (quoting United States v. Roberts, No. 18-CR-0528, 2020 WL 1700032, at *4 (S.D.N.Y. Apr. 8, 2020)) (internal citations, alterations, and quotation marks omitted) (emphasis in original). Consequently, this Court

15

"strongly urges" the BOP to consider Defendant for furlough under Section 3622 in light of the COVID-19 crisis, his age, and underlying medical conditions until such time as the crisis abates.[5]  Id.

## CONCLUSION

For the reasons stated herein, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (D.E. 865) is DENIED without prejudice to renew.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: November  2 , 2020
       Central Islip, New York

---

[5] This Order (and recommendation) does not preclude Defendant from again pursuing available forms of relief from the BOP, such as furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020) and the Attorney General's April 3, 2020 memorandum.  The decision to grant that relief, however, is reserved to the discretion of the BOP.

16